IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KENNETH LAWRENCE,

  Plaintiff,

v.

R. WILEY, et al.

  Defendants.

CIVIL ACTION NO.
1:03-CV-2970-RWS

## **ORDER**

Now before the Court are (i) Plaintiff's Motion for Leave to Proceed *in Forma Pauperis* [36-1], (ii) Plaintiff's Motion to Compel Reply to Interrogatories [37-1], (iii) Plaintiff's Motion for Sanctions [40-1], (iv) Plaintiff's Motion for Summary Judgment [48-1], and (v) Defendants' Motion for Summary Judgment [49-1]. The Court has reviewed the record, and now enters the following Order.

### **Background**

Plaintiff initiated this *pro se* civil action on September 29, 2003, alleging that certain officials at the United States Penitentiary in Atlanta, Georgia ("USP

Atlanta") placed him in administrative detention in violation of his constitutional rights. (See Compl. [1-1]; see also Am. Compl. [3-1].) In particular, he alleges that Defendants removed him from the general population, and assigned him to restricted confinement in retaliation for his seeking (with some success) habeas corpus relief respecting his eligibility for placement in a Community Corrections Center. (See id.)[1] He additionally alleged that their actions deprived him of due process, citing both their failure to notify him promptly of the "detainer" that was the ostensible basis for his restricted detention, and to provide him with the reclassification hearing mandated by Bureau of Prison ("BOP") rules. He sought monetary damages against the five named prison officials in their individual capacities pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed.2d 619

---

[1] Plaintiff asserts that Defendants' decision to place him in administrative detention occurred only ten days after he informed them that Magistrate Judge Alan J. Baverman had issued a Report and Recommendation in Lawrence v. Ashcroft, Civil Action No. 1:03-CV-1028-WBH (N.D. Ga. Sept. 4, 2003), in which Judge Baverman, on Plaintiff's Petition, concluded that prison officials had been applying an impermissibly narrow regulation respecting prisoners' eligibility for placement in Community Corrections Centers. The Report and Recommendation concluded that Plaintiff was entitled to prompt consideration of his request to be placed in a Community Corrections Center under 18 U.S.C. § 3624(c). Plaintiff's habeas case was dismissed, however, when prison officials came forward with a "detainer," discussed in greater detail *infra*, which, under prison regulations, precludes an inmate's placement in a Community Corrections Center.

(1971). Shortly thereafter, Plaintiff amended his pleading to request further, punitive sums. (See Am. Compl. ¶ 3 [3-1].)

Plaintiff sought the ability to proceed *in forma pauperis* [2-1], and his request was granted by Magistrate Judge Alan J. Baverman on March 1, 2004 [9-1]. This Court subsequently conducted a frivolity review pursuant to the Prison Litigation Reform Act ("P.L.R.A."), 28 U.S.C. § 1915A, and held that Plaintiff would be permitted to proceed without paying the civil filing fee. (See March 8, 2004 Order [10-1]) (Hunt, J.).)[2]  Both Plaintiff and Defendants have now moved for summary judgment.

## Discussion

**I.  Preliminary Matters**

Two of the motions before the Court can be resolved with little discussion. First, Plaintiff's Motion for Leave to Proceed *in Forma Pauperis* [36-1] is **DENIED as moot**. As the foregoing discussion makes clear, Plaintiff has already been permitted to proceed *in forma pauperis* in this action. His

---

[2]This case was originally assigned to Judge Willis B. Hunt, Jr., but was subsequently transferred to Judge William S. Duffey on July 15, 2004. When Judge Duffey recused himself from the case in August of 2004, it was assigned to the undersigned.

renewed request only asks that he be able to continue as a pauper *vis-a-vis* his demand for mandamus relief. The Court denied Plaintiff's request to pursue such relief, however, by Order dated August 31, 2004 [28], and along with it, his request to pursue the mandamus claim *in forma pauperis*. Thus, this new motion is duplicative of one already denied by the Court, and relates to a claim Plaintiff has not been permitted to pursue.

Second, Plaintiff's Motion to Compel Reply to Interrogatories [37-1] is **DENIED**. In that motion, he requests that the Court "compel" Defendants to answer the Complaint, and likewise require that they respond to certain, unidentified interrogatories allegedly served upon them by Plaintiff. Defendants have now answered the Complaint, so, insofar as Plaintiff requests that this Court require a responsive pleading, his motion is moot. As it relates to his request that Defendants be made to respond to interrogatories, moreover, the local rules of this Court provide that discovery is typically not permitted in civil rights litigation initiated by prisoners. See LR, NDGa, at Appendix F (setting forth "Discovery Tracks" for civil actions, and assigning civil rights actions by prisoners to a "0" Months Discovery track). Because Plaintiff, prior to serving

the interrogatories, did not request leave of Court to pursue discovery in this case, the Court will not compel Defendants' responses to his interrogatories.[3]

## II.     Motion for Sanctions

Plaintiff also moves for sanctions against Defendant Deborah Griffin. He states that she committed perjury in a September 23, 2003 declaration she submitted in his habeas case, <u>Lawrence v. Ashcroft</u>, Case No. 1:03-CV-1028-WBH (N.D. Ga. filed April 17, 2003). In particular, he takes issue with a statement in that declaration suggesting that he was placed in administrative detention because of a "newly lodged detainer" (Plaintiff's words) issued by a Michigan state court. He states that any assertion that the detainer was "newly lodged" is false, as other records indicate that USP Atlanta officials had been aware of the warrant that served as the basis for the detainer since his arrival at the prison.

There are two flaws with Plaintiff's argument, both of which lead this Court to deny his request for sanctions. First, the declaration at issue does not,

---

[3]Plaintiff repeatedly asserts in his filings that the Court has previously required that Defendants respond to these interrogatories, citing its September 24, 2004 Order [31]. Contrary to Plaintiff's assertions, that Order does not require a response to, or even mention, interrogatories. Rather, the Order merely extended the time within which Defendants would be required to respond to his Complaint.

5

as Plaintiff contends, state that the detainer at issue was "newly" lodged. It simply says that, "A detainer has been lodged against inmate Lawrence by the State of Michigan District Count, 22nd Judicial District[.]" (See Mot. for Sanctions, Ex. II, ¶ 6.) Even accepting everything else Plaintiff says as true, there is nothing inaccurate or perjurious about that statement.

Second, to the extent the declaration even *suggests* that USP Atlanta had only recently received the "detainer," that statement is not inconsistent with other records or testimony before the Court. In the same declaration, Defendant Griffin defines her understanding of a "detainer" as "a *formal request* from a federal, state, or local jurisdiction for an inmate's custody upon completion of a term of imprisonment." (Id. ¶ 4 (emphasis supplied).) There is accordingly a distinction, at least in nomenclature employed by Defendant Griffin, between the warrant that served as the basis for the detainer, which USP Atlanta officials apparently received on October 31, 2002, and the "formal request" by the Michigan District Court that Plaintiff be detained, which the record reflects was only received by the prison on September 19, 2003–just four days before

6

Defendant Griffin made her declaration.[4]  For these reasons, Plaintiff's Motion for Sanctions [40-1] is **DENIED**.

## III.  Motions for Summary Judgment

### A.  The Parties' Contentions

Both Plaintiff and Defendants have moved for summary judgment in this case.  Plaintiff's motion presents his theory that the Defendants' proffered reason for his placement in administrative detention (*i.e.*, receipt of the detainer) is false and pretextual, and his assertion that he was denied certain due process protections mandated by BOP rules.  He attaches to his motion various documents containing handwritten emphasis and notes.  The motion is not, however, supported by affidavit or declaration,[5] and the documents he appends

---

[4]Defendant Griffin's understanding of the "detainer" concept is also supported by other exhibits placed in the record by Plaintiff, including his periodic "team" reviews in USP Atlanta before September 19, 2003, indicating that, notwithstanding the warrant, he did not have a "detainer" on file.

[5]Indeed, the only affidavit in the record containing Plaintiff's testimony is attached to his "Brief in Support of . . . Complaint," and relates that, at one point, Defendant Griffin informed him that his placement in administrative detention was a consequence of his "efforts to obtain access to the community via Furlough and Community Corrections Center, CCC, placement."  (See Lawrence Decl. ¶ 5 [39-4].)  That testimony does not, however, establish that no genuine issue of material fact exists *vis-a-vis* Plaintiff's claims. Rather, Defendant Griffin's declaration, offered in support of Defendants' Motion for Summary Judgment, states the referenced "efforts" were merely one factor she took into account in concluding that Plaintiff would pose a "flight risk" when informed of the

7

to his motion are unauthenticated.[6]

Turning to Defendants' motion, they attempt to construe the claims asserted by Plaintiff narrowly, treating his Complaint as limited to an assertion of (i) unlawful retaliation (ii) for exercise of his right to access the courts (iii) as it relates to the initial decision to place him in restricted detention. Relying on a declaration by Defendant Griffin, they go on to state that they are entitled to judgment as a matter of law. They underscore Defendant Griffin's allegations that it was her decision, and hers alone, to recommend that Plaintiff be placed in administrative detention, and that another (unnamed) prison official ultimately had to make the decision to give effect to her recommendation. Defendants also cite her statement that, when she made the challenged recommendation, she was not aware of the habeas action that Plaintiff asserts was the motivating factor behind her decision. They emphasize that it is instead her testimony that the recommendation was predicated on her concern that, once Plaintiff learned of

---

detainer that had been lodged against him, and that it was this perceived risk to prison security that was the motivation behind her recommendation that he be placed in administrative detention.

[6]Defendants, somewhat surprisingly, have filed no response to this motion. Rather, they simply ask in their Motion for Summary Judgment that, if their Motion is denied, the Court provide them with discovery and additional time to respond to Plaintiff's filing.

8

the "detainer" that had been lodged against him, he would pose a threat to prison security.[7]

**B.     Analysis**

The Court declines to grant either party summary judgment based on the current record.  As it relates to Plaintiff's motion, his filing is entirely bereft of sworn statements or authenticated documentation.  Rather, he relies principally on his conclusory assertions respecting the motivations of others and alleged due process deprivations.  He has fallen short of demonstrating that no genuine issue of fact exists with respect to his claims.  Cf. United States v. 5800 S.W. 74th Ave., 363 F.3d 1099, 1101 (11th Cir. 2004) (even if a motion for summary judgment is unopposed, the movant must show it is entitled to judgment on the

---

[7]Defendants also make a brief attempt to argue that Plaintiff's placement in administrative detention did not produce the type of "adverse effect" on speech necessary to state a claim for retaliation.  They rely on the Eleventh Circuit's recent decision in Bennett v. Hendrix, 423 F.3d 1247, 1254 (11th Cir. 2005), where it stated that this element of the retaliation claim can only be proven by showing that "the defendant's allegedly retaliatory  conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights"–a showing they contend Plaintiff has failed to make in this case.  For obvious reasons, the Court cannot accept the assertion that restricting an individual, even a prisoner, to a cell for 23 hours a day would not affect an ordinary person in their decision to engage in protected speech. See, e.g., Smith v. Yarrow, 78 Fed. Appx. 529, 540 (6th Cir. 2003) ("'In the prison context, an action comparable to transfer to administrative segregation would certainly be adverse,' . . . .") (quoting Thaddeus-X v. Blatter, 175 F.3d 378, 398 (6th Cir.1999)).

merits, based on evidentiary materials in the record); Dunlap v. Transam. Occidental Life Ins. Co., 858 F.2d 629, 632 (11th Cir. 1988) (stating likewise). The record reflects conflicting accounts of the reasons for Plaintiff's administrative segregation, and provides a picture that is, at best, unclear respecting what process he was afforded at the onset of, and during, his detention.

Defendants' request for judgment "in favor of each defendant on all of plaintiff's claims," for several reasons, fares no better.  First, the motion misapprehends the scope of Plaintiff's Complaint.  Initially, it focuses solely on Plaintiff's contention that the decision to place him in administrative detention was the result of an impermissible retaliatory motive,[8] ignoring his due process claims.  Although the Court has some doubt respecting the viability of such claims, the issue has never been directly addressed by Defendants, and the Court is not inclined to resolve the matter on an incomplete record.

---

[8]To Defendants' credit, the Orders entered in this case, by Judge Baverman, Judge Hunt, and the undersigned, have sometimes treated this action as one presenting "retaliation claims."  That, plainly, is the gravamen of Plaintiff's suit.  His pleading, however, additionally contains due process claims, attacking both prison officials' refusal to provide "an explanation and a hearing" respecting his placement in administrative detention, and Defendants' failure to give him prompt notice of the "detainer" issued by the Michigan court. (See Compl. at 2-3.)

10

In addition, Defendants' motion confines its consideration of Plaintiff's "protected speech" to that embodied in his filing of the habeas petition–attempting to undermine the "causal connection" element of his retaliation claim through Defendant Griffin's statement that she had no knowledge of the habeas petition or Judge Baverman's Report and Recommendation at the time she made the challenged decision.  Liberally construed, however, Plaintiff's Complaint alleges that Defendants' (purportedly) retaliatory acts were taken in response to his broader opposition to the BOP's Community Corrections Center policy (including, *e.g.*, his communication with other inmates about the policy and his precipitative grievances).  Defendants do not address these matters in their motion or in Defendant Griffin's declaration, and thus, genuine issues of material fact would remain as to these aspects of Plaintiff's retaliation claim.[9]

---

[9]Notably, the record [39-4] contains a sworn statement by Plaintiff that, in a response to a request he filed seeking clarification of the reasons he had been placed in administrative detention, Defendant Griffin admitted the placement was "due to [Plaintiff's] efforts to obtain access to the community via Furlough and Community Corrections Center, CCC, placement." (See Lawrence Decl. ¶ 5.) He asserts that he sent this response to the Clerk of this Court (without retaining a copy for himself), but that prison officials removed it from his mail before it was sent to the Court. (Id. ¶¶ 8-9.) Plaintiff states that when he tried to obtain the copy retained by prison officials at USP Atlanta through a Freedom of Information Act request, moreover, he was told that the document had been

Finally, Defendants do not address Plaintiff's contentions, raised in his August 15, 2005 "Brief in Support of . . . Complaint" [39], directed at his prolonged detention in administrative segregation–that is, his assertions that his continued confinement in restrictive detention for six months was likewise the product of impermissible motives, not accompanied by appropriate due process safeguards, and resulted in him being denied medical care necessary for treatment of HIV.  Again, to Defendants' credit, at the time he made the filing Plaintiff had already once amended his pleading, so that submission did not operate to amend his complaint as a matter of course.  See FED. R. CIV. P. 15(a); compare Moore v. State of Florida, 703 F.2d 516, 521 (11th Cir. 1983) (holding that district court erred in failing to treat motion to reconsider, in which incarcerated *pro se* plaintiff stated new claim, as amendment to complaint, where no previous amendment had occurred and no responsive pleading had been filed).  But this Court is disinclined to deny Plaintiff the opportunity to amend his pleading to assert these closely related claims merely because he labeled his filing a "Brief in Support."  Consequently, the Court will treat Plaintiff's "Brief

---

removed from his file, and was thus unavailable.

in Support" [39] as a Motion for Leave to Amend pursuant to Rule 15(a), and will permit Defendants the opportunity to file a response in opposition to that proposed amendment.

Furthermore, even if the Court were to read Plaintiff's Complaint as narrowly as Defendants have done in their papers, it could not grant the relief sought in their motion, and, in particular, could not dismiss Plaintiff's retaliation claim against Defendant Griffin.  Defendant Griffin argues that any claim against her necessarily fails because she lacked knowledge of Plaintiff's habeas petition at the time she recommended Plaintiff be placed in administrative detention. Plaintiff alleged to the contrary in his Complaint.  (See Compl. at 1 ("On Sept. 9, 2003, Petitioner informed M. Mowery, *D. Griffin* and R. Rembert of the Report and Recommendation issued by Magistrate A. Baverman [in Lawrence v. Ashcroft, Civil Action No. 1:03-CV-1028-WBH (N.D. Ga. Sept. 4, 2003)].") (emphasis supplied).)  While a litigant seeking to avoid summary judgment ordinarily "cannot rely on his pleadings, but must file a response that includes other evidence showing that there is a genuine issue for trial[,]" FED. R. CIV. P. 56(e); Combs v. Plantation Patterns, 106 F.3d 1519, 1526 (11th Cir. 1997), courts have been reluctant to apply that rule to incarcerated individuals

13

proceeding *pro se*, especially where, as here, such litigants have not received explicit notice informing them of the need to respond to a motion for summary judgment through affidavits.[10]  See Moore, 703 F.2d at 521 (reversing summary judgment for defendant where *pro se* prisoner-plaintiff was not provided with actual notice of need to respond to summary judgment motion with affidavits); Hudson v. Hardy, 412 F.2d 1091, 1094 (D.C. Cir. 1968) (cited with approval by Eleventh Circuit in Moore, 703 F.2d at 520) ("We hold that before entering summary judgment against appellant, [an incarcerated *pro se* plaintiff,] the District Court, as a bare minimum, should have provided him with fair notice of the requirements of the summary judgment rule.  We stress the need for a form of notice sufficiently understandable to one in appellant's circumstances fairly to apprise him of what is required."); Gonzalez v. Long, 889 F. Supp. 639, 642 (E.D.N.Y. 1995) (allowing *pro se* prisoner additional opportunity to respond to summary judgment motion with affidavits, stating: "Plaintiff's abject failure to

---

[10]While it is typically the practice of the Clerk's Office to send such a notice to persons proceeding *pro se*, in this case, that notice was inadvertently omitted.  Rather, Plaintiff was simply directed to the Court's website to receive information about the necessary procedures to follow in responding to a motion for summary judgment.  Given Plaintiff's circumstances, the Court does not find the identification of the Court's web address sufficient to put Plaintiff on notice of the rigors of the summary judgment process.

14

comply with the requirements of Rule 56(e) . . . would normally require the Court to grant defendants' summary judgment motion.  The Court, however, is mindful that *pro se* litigants should be given special latitude in responding to such a motion."); Dellamore v. Stenros, 886 F. Supp. 349, 351 (S.D.N.Y. 1995) (considering allegations made in *pro se* prisoner's pleading in denying motion for summary judgment); Keenum v. Amboyer, 558 F. Supp. 1321, 1322 (E.D. Mich. 1983) ("This Court believes that the drafters of Rule 56(e) did not intend section (e) to be applied wholesale to the present pro se prisoner petitions."); see also Johnson v. Pullman, Inc., 845 F.2d 911, 913 (11th Cir. 1988) ("In several cases involving *pro se* litigants, this Court has held that, in addition to the 10-day warning, a party must receive notice of his right to file affidavits or other material in opposition to the motion and of the consequences of default.") (internal quotations omitted).

  Here, taking into account Plaintiff's allegation that he had informed Defendant Griffin of his habeas petition prior to his placement in administrative detention, and the proximity in time between Judge Baverman's favorable ruling in that case and such placement, the Court cannot say that no reasonable trier of fact could conclude that Plaintiff was the subject of unlawful retaliation.

15

For all the foregoing reasons, Plaintiff's Motion for Summary Judgment [48-1] and Defendants' Motion for Summary Judgment [49-1] are **DENIED**.

## IV.   Scheduling Matters

The denial of the parties' respective motions for summary judgment requires that the Court address certain scheduling matters. It takes the opportunity to do so here.

First, as related earlier, the Court is inclined to treat Plaintiff's "Brief in Support of . . . Complaint" [39] as a Motion for Leave to Amend pursuant to Rule 15(a). In the event Plaintiff no longer seeks such an amendment, he has ten days from the date appearing on this Order to so notify the Court. Defendants, reminded of Rule 15(a)'s admonition that "leave [to amend] shall be freely given when justice so requires[,]" shall have twenty days from the date appearing below to file any response in opposition to the proposed amendment. The Court will resolve the motion promptly upon the expiration of that twenty day period.

Second, while the Court has denied summary judgment at this juncture, due in large part to Defendants' apparent misunderstanding of the scope of Plaintiff's Complaint, it remains of the view that many of the claims at issue here

16

may be amenable to summary adjudication.  For that reason, and in light of Defendants' request for discovery in the event their motion were denied, the Court is inclined to permit the parties the opportunity to move for summary judgment again following the expiration of a reasonable discovery period.  Accordingly, a four-month discovery period will commence immediately upon the announcement of this Court's ruling on Plaintiff's Motion to Amend.  At the expiration of that discovery period, the parties will each have twenty days within which to move for summary judgment.  LR 56.1C, NDGa.[11]

## Conclusion

Plaintiff's Motion for Leave to Proceed *in Forma Pauperis* [36-1] is **DENIED as moot**.  Plaintiff's Motion to Compel Reply to Interrogatories [37-1], Motion for Sanctions [40-1], and Motion for Summary Judgment [48-1] are **DENIED**.  Defendants' Motion for Summary Judgment [49-1] is, likewise,

---

[11]Due to the potential complexities attendant to discovery, and in light of the core, and at times, intricate factual disputes at issue in this case, should Plaintiff wish to be represented by counsel, the Court would consider requesting that an attorney represent him in this matter pursuant to 28 U.S.C. § 1915(e)(1).  Plaintiff should file any request for representation, explaining the reasons he desires to receive the benefit of counsel, as soon as practicable upon receipt of this Order.

**DENIED**.  The parties are **DIRECTED** to comply with the scheduling

mandates set forth above, *supra*, Part IV.

    **SO ORDERED** this   24th   day of January, 2006.


                        /s/ Richard W. Story
                        RICHARD W. STORY
                        UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)